**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**
—————————————————————————————

**JULIE A. PAPERO,**

                              **Plaintiff,**          **Civil Action No.: 19-cv-01309**

**v.**

**ROSWELL PARK COMPREHENSIVE**
**CANCER CENTER, HEIDI FINDLAY, and**
**LAUREL DIBROG,**

                              **Defendants.**
—————————————————————————————

## INDEX OF DOCUMENTS FILED WITH STATE COURT

Exhibit 1      Summons to Roswell Park Comprehensive Cancer Center, filed with the Erie County Clerk on September 3, 2019 via the New York State CEF filing.

Exhibit 2      Verified Complaint, filed with the Erie County Clerk on September 3, 2019 via the New York State CEF filing.

Exhibit 3      Summons to Heidi Findlay, filed with the Erie County Clerk on September 3, 2019 via the New York State CEF filing.

Exhibit 4      Summons to Laurel Dibrog, filed with the Erie County Clerk on September 3, 2019 via the New York State CEF filing.

Exhibit 5      Affidavit of Service, filed with the Erie County Clerk on September 5, 2019 via the New York State CEF filing.

*Exhibit 1*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE
-----------------------------------------------------------------X
JULIE A. PAPERO,

                            *Plaintiff,*

       v.

ROSWELL PARK COMPREHENSIVE
CANCER CENTER, HEIDI FINDLAY, and
LAUREL DIBROG,

                        *Defendants.*
-----------------------------------------------------------------X

Index No. _____

**SUMMONS**

         To:     Roswell Park Comprehensive Cancer Institute
                 Elm & Carlton Streets
                 Buffalo, New York 14263

         You are hereby summoned and required to serve upon Plaintiff's attorney an answer to the complaint in this action within twenty days after the service of this summons, exclusive of the day of service, or within thirty days after service is complete if this summons is not personally delivered to you within the State of New York. In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the complaint.

         The basis of the venue designated is Erie County, New York, as it is the residence of the Plaintiff.

         Venue is also designated as Erie County, New York, as the Defendants are located in Erie County, New York and the acts and omissions giving rise to this claim occurred in Erie County, New York.

Dated: September 3, 2019
       Buffalo, New York

                 By: _____
                      Lindy Korn, Esq.
                      Law Office of Lindy Korn
                      *Attorney for Julie A. Papero*
                      535 Washington St., Ninth Floor
                      Buffalo, New York 14203
                      716-856-5676
                      E-mail: lkorn@lkorn-law.com

*Exhibit 2*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE
-------------------------------------------------------------------X
JULIE A. PAPERO,

                         Index No. _____

                   *Plaintiff,*

v.                             **VERIFIED**
                                **COMPLAINT**

ROSWELL PARK COMPREHENSIVE
CANCER CENTER, HEIDI FINDLAY, and
LAUREL DIBROG,
                   *Defendants.*
-------------------------------------------------------------------X

      Plaintiff, Julie A. Papero, by and through her attorneys, The Law Office Of Lindy Korn,

PLLC, hereby complains of the Defendants, Roswell Park Comprehensive Cancer Center, Heidi

Findlay, and Laurel Dibrog, upon information and belief, as follows:

### NATURE OF THE CLAIMS

      Plaintiff Julie A. Papero seeks the appropriate remedies and damages for discriminatory

treatment based on sex (sex/pregnancy discrimination, hostile work environment because of sex),

familial status, and retaliation in violation of the New York State Human Rights Law (Executive

Law, Article 15) § 296, the Family Medical Leave Act ("FMLA"), and state and federal Equal Pay

Act claims.

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to New York Civil Practice Law and New

     York Executive Law, Article 15, § 296, 29 U.S.C. §§ 2617(a)(2), 29 U.S.C. § 216(b), and 28

     U.S.C. §§ 1331.

2. Venue is proper in this Court based upon Ms. Papero's residency within the County of Erie,
   Defendants have an office location and residency within the County of Erie, and a substantial part
   of the acts or omissions giving rise to the Ms. Papero's claims occurred in the County of Erie.

## PARTIES

3. At all times referenced in the complaint, Plaintiff, Julie A. Papero ("Ms. Papero"), is a resident of
   the State of New York, County of Erie.

4. At all times referenced in the complaint, Defendant Roswell Park Comprehensive Cancer Center
   ("Defendant Roswell Park") is a state government agency and has offices located at Elm and
   Carlton Street, Buffalo, New York 14203.

5. At all relevant times, Defendant Roswell Park employed at least 50 employees.

6. At all relevant times, Defendant Heidi Findlay ("Defendant Findlay") Defendant Laurel DiBrog
   ("Defendant DiBrog") are residents of the State of New York and the County of Erie.

7. From 2014-2018, Defendants Findlay and DiBrog were Ms. Papero's supervisors and/or had
   supervisory authority over Ms. Papero.

8. Together, Defendant Roswell Park, Defendant Findlay, and Defendant DiBrog will be referred to
   in this Verified Complaint as "Defendants."

## MATERIAL FACTS

9. At all times referenced in the complaint, Ms. Papero worked at Defendants' office located at Elm
   and Carlton Street, Buffalo, New York 14203.

10. Plaintiff was qualified for her position. Throughout her time with Defendants, Ms. Papero received
    no verbal or written disciplinary actions from Defendants through her union's contract-mandated,
    progressive discipline process.

2

11. As recently as February 13, 2018, Ms. Papero received a satisfactory performance evaluation.

12. During Ms. Papero's time with Defendants, Defendants discriminated and violated various labor laws in the following ways: illegally demoted Ms. Papero; denied Ms. Papero a promotion and pay raise; and gave Ms. Papero more job responsibilities without a job level or title change. Male employees of Defendants were not treated in this manner.

13. The most recent act of discrimination occurred on Monday, July 30, 2018 when Ms. Papero was constructively discharged from her position at Roswell Park. Ms. Papero returned from seven months of maternity leave and was notified within a week that her job was being illegally eliminated by Defendants. As a result, Ms. Papero's doctor took her out of work due to anxiety and depression caused by Defendants' discriminatory treatment and the hostile work environment they created for Ms. Papero.

14. On October 31, 2011, Defendants hired Ms. Papero as a Web Editor. Ms. Papero held this position until April 6, 2018, when she was illegally demoted to a Digital Content Coordinator position almost immediately after returning from her maternity leave.

15. As a Web Editor, Ms. Papero's job duties involved planning, developing, and managing a digital content strategy for Defendant Roswell Park's website, writing and editing content for website and digital campaigns, implementing production, establishing quality assurance and maintaining the integrity of the content and Defendant Roswell Park's brand. Ms. Papero also analyzed trends and utilized metrics and analytics to measure strategy effectiveness, created best practices for digital communication, and trained, mentored, and managed a content team.

16. As Web Editor, Ms. Papero made $71,000.00 in annual salary and held a Grade Level 18 position.

17. After Ms. Papero's demotion to Digital Content Coordinator, her new job duties comprised all of her old duties as Web Editor except managing staff, as Defendants stripped Ms. Papero of her

3

direct reports. Ms. Papero made $16,000.00 less annually after her demotion, earning $56,000.00 in annual salary. Ms. Papero was also dropped down four Grade Levels, as the Digital Content Coordinator was a Grade Level 14 position.

18. Prior to Ms. Papero's demotion, Digital Content Coordinators never performed analytics work planning or involved in significant meetings with stakeholders. Further, Digital Content Coordinators were never expected to overhaul websites. After Ms. Papero's demotion to Digital Content Coordinator, she was expected to perform these additional duties for no additional salary.

19. Beginning in June 2012. Ms. Papero unofficially supervised two Digital Content Coordinators, Jaclyn Kasprzak and Dan Cave. Ms. Papero managed the team's workflow and ultimately was the person responsible for web requests and reviewing the web content.

20. In 2013, Ms. Papero was offered a position at Memorial Sloan Kettering Cancer Center. In response, Defendant Roswell Park assigned Ms. Kasprzak and Mr. Cave as Ms. Papero's direct reports. Ms. Papero received a pay raise but no title or grade level changes.

21. In 2014-2015, Ms. Papero's team was assigned to work for the Public Affairs department, which was soon after absorbed into the Marketing department. Ms. Papero's new supervisor became Defendant Heidi Findlay ("Defendant Findlay"), then Manager of Marketing and now the Director of Marketing and Communications.

22. Defendant Findlay's direct supervisor is Defendant Laurel DiBrog, Chief Marketing and Communications Officer and the Senior Vice President of Marketing and Communications.

23. In summer 2016, Dan Cave, one of Ms. Papero's subordinates, was reassigned to a new position involving online marketing under a different supervisor, Michael Gonzalez. Upon information and belief, Mr. Cave received a pay raise and a job title level upgrade. Mr. Cave went from a Grade 14 to a Grade 18, Ms. Papero's former pay grade.

4

24. As a result, Ms. Papero's team was reduced to only one staffer, Ms. Kasprzak. Ms. Papero and Ms. Kasprzak gained the responsibility of Mr. Cave's previous workload. Mr. Cave was not replaced by Defendants. Despite this, Defendants expected that Ms. Papero's team deliver the same amount and quality of work as before his reassignment to Mr. Gonzalez's team.

25. Ms. Papero and Ms. Kasprzak complained to Defendant Findlay about their unreasonable workload and performance expectations to no avail.

26. Instead, Defendant Findlay berated, micromanaged, and forced an accounting of Ms. Papero's and Ms. Kasprzak's time. The justification made to Ms. Papero and Ms. Kasprzak for this minute-by-minute accounting of their time was that it would help secure a new digital content coordinator. However, this accounting was merely punitive in nature.

27. Ms. Papero and Ms. Kasprzak complied with Defendant Findlay's request. Despite this, Defendants never filled Mr. Cave's position..

28. Ms. Papero felt as if she was treading water at work because of the lack of adequate staffing.

29. During this time, Ms. Papero made the personal decision to pursue parenthood as a single mother.

30. In 2016, Ms. Papero became pregnant with her son.

31. On or about August 10, 2017, Ms. Papero requested FMLA leave from her employer and was approved for continuous FMLA leave from August 28, 2017-November 19, 2017. Ms. Papero also made arrangements with her employer to have an additional few months of maternity leave per her union contract.

32. In mid-August 2017, Ms. Papero's doctor required her to work from home full-time due to pregnancy complications.

33. On August 28, 2017, Ms. Papero started her maternity leave and went out on official FMLA leave.

34. On August 31, 2017, Ms. Papero gave birth to her baby.

5

35. On November 19, 2017, Ms. Papero's FMLA leave ended; however, her maternity leave continued under her union contract.

36. On March 30, 2018, Ms. Papero returned to work from maternity leave.

37. Five days later, on April 4, 2018, Ms. Papero met with Defendant Findlay to go over Ms. Papero's projects. Defendants Findlay told Ms. Papero to "roll up your sleeves and get your hands a little dirty" because Ms. Kasprzak was out on FMLA leave since January 2018.

38. During Ms. Papero's leave, Defendants posted and filled the open Digital Content Coordinator position. Since Ms. Kasprzak was out on leave, Ms. Papero was left, again, with one Digital Content Coordinator.

39. Two days later, on April 6, 2018, only one week after returning from maternity leave, Defendant Findlay eliminated Ms. Papero's job as Web Editor. Ms. Papero had held this position for the past seven years.

40. Defendants offered Ms. Papero to apply for a probationary position of Digital Content Coordinator, which was a Grade 14 position. This was a demotion in pay and title and was in retaliation for utilizing FMLA leave and maternity leave.

41. Defendants had discretion as to whether or not the position was considered probationary, and yet they kept Ms. Papero's position probationary. This was clearly intentionally punitive.

42. During the meeting with Defendant Findlay when Ms. Papero learned of her demotion, Defendant Findlay notified Ms. Papero that she, Defendant Findlay, was now managing the entire team.

43. It was unclear to Ms. Papero who was now performing the Web Editor duties within the Marketing Department, and if any staff member was, whether they were working above their job duties and pay grade.

6

44. Additionally, the Digital Content Coordinator role did not involve content strategy, which was part of the Web Editor job responsibilities.

45. Soon after her demotion, Ms. Papero learned of webpages and projects that had various gaps where content strategy had not been implemented or updated during Ms. Papero's maternity leave. Clearly, Defendants did not have anyone working on all of the duties required of a Web Editor.

46. Further, the position of Web Editor is not an obsolete position, as the area of digital marketing was only growing, and flattening the department and removing workflow plans and hierarchy levels of review seemed to be going backwards, not forward, for an organization such as Roswell Park.

47. While out on maternity leave, Ms. Papero received her performance evaluation that cited Defendant Findlay's goals for Ms. Papero for the upcoming year in her role as Web Editor, not Digital Content Manager.

48. In addition, Defendants created a new working organization chart. This chart was put out in later winter 2018 while Ms. Papero was on leave. Her title still said Web Editor, but everyone had been "flattened" and were now reporting to Defendant Findlay. Defendants took away and undermined Plaintiff's supervisory authority by taking away her direct reports while she was out on maternity leave.

49. Ms. Papero's job was eliminated by Defendants in retaliation for taking maternity leave to bond with her son, including FMLA continuous leave.

50. Soon after meeting with Defendant Findlay, Ms. Papero complained about her illegal demotion to her union on April 6, 2018 on the basis of her sex and familial status. Ms. Papero was punished for taking maternity leave and FMLA leave.

51. On April 12, 2018, Ms. Papero's union filed a grievance on her behalf based on her complaints.

7

52. Around this time, Ms. Papero also learned that a previous male subordinate of hers, Daniel Cave, received a promotion during her maternity leave. This promotion including a title and a level change from a Grade 14 to a Grade 18, the latter of which was Ms. Papero's former Grade. Mr. Cave, upon information and belief, was also awarded a direct report to help with his workload.

53. After complaining of discrimination, Ms. Papero's work environment became increasingly hostile. For example, Ms. Papero was required to give the same presentations that she gave as a Web Editor, but this time, Mr. Cave and Defendant Findlay were present. Defendant Findlay would make a point to mention that Ms. Papero was the Digital Content Coordinator rather than the Web Editor. Defendant Findlay pointing out Ms. Papero's demotion to the entire staff Ms. Papero was presenting to was extremely insulting to Ms. Papero and amounted to intentional harassment by Defendant Findlay.

54. Adding to the hostile work environment Ms. Papero endured, Mr. Cave started leading the meetings that Ms. Papero formerly led, prior to her pregnancy. Mr. Cave had taken over as leader and replaced Ms. Papero because of her pregnancy. Prior to Ms. Papero's pregnancy and resulting maternity and FMLA leaves, Mr. Cave was Ms. Papero's subordinate.

55. Adding to the hostile work environment Ms. Papero endured, Ms. Papero was told by Defendant Findlay that the only reason Ms. Papero was able to retain her office was because of breastfeeding. Ms. Papero was led to believe by Defendant Findlay that once she was finished breastfeeding, she would be removed from her office and would have then been placed in a shared office with one or two other Digital Content Coordinators (who were also Ms. Papero's former subordinates).

56. Ms. Papero's doctor placed her on sick leave from May 21, 2018 to July 29, 2018 due to the hostile work environment and discriminatory conduct Defendants subjected her to, including the illegal demotion because of her sex and pregnancy,

8

57. On July 30, 2018, Ms. Papero was constructively discharged from her position at Roswell Park due to sex and pregnancy discrimination, FMLA retaliation, and a hostile work environment created by Defendants.

58. Defendants' actions were intentional and intended to harm Ms. Papero.

## FIRST CAUSE OF ACTION
### Retaliation in Violation of the Family Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2615

59. Ms. Papero repeats each and every allegation set forth herein in the preceding paragraphs as though fully set forth herein.

60. To establish a FMLA retaliation claim, a plaintiff must establish that: "(1) she exercised rights protected under the FMLA; (2) she was qualified for her position, (3) she suffered an adverse employment action; and, (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Potenza v. City of New York*, 365 F.3d 165 (2nd Cir, 2004).

61. As to the first element, Plaintiff exercised rights protected under the FMLA when she utilized FMLA leave during and after her pregnancy.

62. As to the second element, Plaintiff was qualified for her position. She was hired by Defendants and received successful performance reviews during her tenure there.

63. As to the third element, Plaintiff suffered an adverse employment action when she was demoted in title, supervisory authority, grade level, and pay for engaging in protected activity, taking FMLA leave.

64. As to the fourth element, Plaintiff was informed of her retaliatory demotion by Defendants within a week of returning to work after FMLA and maternity leave. This gives rise to an inference of retaliatory intent.

9

65. Defendants' actions were willful and not done in good faith. As a result of Defendants' conduct, Ms. Papero suffered both economic and emotional harm.

66. Based on the foregoing, Plaintiff has established a cause of action for FMLA retaliation against the Defendants.

**SECOND CAUSE OF ACTION:**
**Familial Status Discrimination in Violation of New York State Human Rights Law (Executive Law, Article 15), § 296(1) and Creation of a Hostile Work Environment in Violation of the Same.**

67. Ms. Papero repeats each and every allegation set forth herein in the preceding paragraphs as though fully set forth herein.

68. Executive Law § 296 prohibits discrimination against an employee in the workplace because of her familial status.

69. Plaintiff is a member of a protected class. She became pregnant and had a child during her employment with Defendants. Plaintiff was qualified for her position. She was hired by Defendants and received successful performance reviews during her tenure there.

70. Plaintiff suffered an adverse employment action because of her familial status as a mother. Ms. Papero was demoted in title, supervisory authority, grade level, and pay for taking FMLA and maternity leave prior to and after the birth of her child. The adverse acts against Ms. Papero occurred under circumstances of discrimination; namely, Ms. Papero was informed about her demotion and subsequent title change, as well as her salary, grade level, and supervisory authority reduction within a week after her return from maternity leave.

71. Based on the foregoing, Plaintiff has established a cause of action for familial status discrimination against the Defendants.

10

## THIRD CAUSE OF ACTION
### Retaliation in Violation of New York State Human Rights Law
### (Executive Law, Article 15) § 296

72. Ms. Papero repeats each and every allegation set forth herein in the preceding paragraphs as though
fully set forth herein.

73. To establish a prima facie case of retaliation, a plaintiff must show: "1) she has engaged in
protected activity, (2) her employer was aware that she participated in such activity, (3) she
suffered an adverse employment action based upon her activity, and (4) there is a causal connection
between the protected activity and the adverse action." *Matter of Abram v. N.Y. State Div. of
Human Rights*, 71 AD3d 1471, 1474 (4th Dept 2010).

74. Ms. Papero engaged in protected activity known to Defendants when she requested
accommodation for her pregnancy and took a medical leave of absence for the same. Defendants
retaliated against Ms. Papero by demoting her in title, supervisory authority, grade level, and pay
within a week after returning from protected medical leave.

75. Based on the foregoing, Ms. Papero has stated a claim for retaliation against Defendants.

## FOURTH CAUSE OF ACTION
### Sex/Pregnancy Discrimination in Violation of New York State Human Rights Law
### (Executive Law, Article 15) § 296(1) and Creation of a Hostile Work Environment in
### Violation of the Same.

76. Ms. Papero repeats each and every allegation set forth herein in the preceding paragraphs as though
fully set forth herein.

77. Executive Law § 296 prohibits discrimination against an employee in the workplace because of
her sex or pregnancy. A prima facie case of sex discrimination is established when a Plaintiff
can show: 1) membership in a protected class; 2) that she was qualified for her position; 3) she

11

was subjected to an adverse employment action; and 4) under circumstances that give rise to an inference of discrimination.

78. Plaintiff is a member of a protected class. She is female, became pregnant, and had a child during her employment with Defendants. Plaintiff was qualified for her position. She was hired by Defendants and received successful performance reviews during her tenure there.

79. Plaintiff suffered an adverse employment action because of her sex and pregnancy. Ms. Papero was demoted in title, supervisory authority, grade level, and pay for taking FMLA and maternity leave prior to and after the birth of her child. The adverse acts against Ms. Papero occurred under circumstances of discrimination; namely, Ms. Papero was informed about her demotion and subsequent title change, as well as her salary, grade level, and supervisory authority reduction within a week after her return from maternity leave.

80. Based on the foregoing, Plaintiff has established a cause of action for sex/pregnancy discrimination against the Defendants.

### FIFTH CAUSE OF ACTION
### Violation of the New York State Equal Pay Act, New York Labor Law § 194.

81. Ms. Papero repeats each and every allegation set forth herein in the preceding paragraphs as though fully set forth herein.

82. Defendants subjected Ms. Papero to a discriminatory lower rate of pay and other forms of compensation, when compared to similarly-situated male colleagues, on the basis of sex.

83. This was despite Ms. Papero performing equal work requiring equal skill, effort, and responsibility, under similar working conditions, as her similarly-situated male colleagues.

84. Based on the foregoing, Plaintiff has established a cause of action for violations of the NYS Equal Pay Act against the Defendants.

85. Defendants' actions were willful and not done in good faith.

12

86. As a result of Defendants' conduct, Ms. Papero suffered both economic and emotional harm.

## SIXTH CAUSE OF ACTION
### Willful Violation of the Federal Equal Pay Act, 29 U.S.C. 206(d).

87. Ms. Papero repeats each and every allegation set forth herein in the preceding paragraphs as though fully set forth herein.

88. Defendants subjected Ms. Papero to a discriminatory lower rate of pay and other forms of compensation, when compared to similarly-situated male colleagues, on the basis of sex.

89. This was despite Ms. Papero performing equal work requiring equal skill, effort, and responsibility, under similar working conditions, as her similarly-situated male colleagues.

90. Based on the foregoing, Plaintiff has established a cause of action for violations of the federal Equal Pay Act against the Defendants.

91. Defendants' actions were willful and not done in good faith.

92. As a result of Defendants' conduct, Ms. Papero suffered both economic and emotional harm.

## SEVENTH CAUSE OF ACTION
### Constructive Discharge Due to Hostile Work Environment Based on Sex and Familial Status

93. Plaintiff repeats each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

94. "Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily. *Chertkova v. Connecticut Gen. Life Ins.*, 92 F.3d 81, 89 (2d Cir. 1996). Working conditions are intolerable if they are 'so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.' Id*." Chamblee v. Harris & Harris, Inc.*, 154 F. Supp. 2d 670, 2001 U.S. Dist. LEXIS 11153 (S.D.N.Y. July 18, 2001).

13

95. "Constructive discharge requires deliberate action on the part of the employer. Although limited defenses may be available, an employer is presumed responsible where, as here, the perpetrator of the harassment was also the victim's supervisor. See, e.g., *Burlington Indus. v. Ellerth*, 524 U.S. 742, 765, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998)." *Id.*

96. Plaintiff was demoted and suffered loss in salary and title due to illegal pregnancy discrimination and FMLA retaliation by Defendants.

97. Defendants' actions were deliberate.

98. Defendants intentionally created an intolerable work atmosphere that forced Plaintiff to quit involuntarily.

99. As a result of Defendants' illegal discrimination, retaliation, and creation of a hostile work environment, a reasonable employee would have felt compelled to resign, as did Plaintiff.

100. Based on the foregoing, Plaintiff has established a cause of action for constructive discharge against the Defendants.

## INJURY AND DAMAGES

As a result of the acts and conduct complained herein, Ms. Papero has suffered and will continue to suffer the loss of her career and the loss of a salary, pension, bonuses, benefits and other compensation which such employment entails, and out-of-pocket medical expenses. Ms. Papero has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, and injury to her reputation, loss of enjoyment of life, and other non-pecuniary losses. Ms. Papero has experienced severe emotional and physical distress from being illegally demoted because of her pregnancy and taking maternity leave, as described above, has been diagnosed with depression and anxiety by her medical providers, and has subsequently been placed on medication.

14

## PRAYER FOR RELIEF

WHEREFORE, Ms. Papero respectfully requests a judgment against the Defendants:

a.  Awarding Ms. Papero economic damages of lost wages, pension, and medical expenses;

b.  Awarding Ms. Papero compensatory damages for mental, emotional, and physical injury, distress, pain and suffering, and injury to her reputation in an amount to be proven;

c.  Awarding Ms. Papero punitive damages;

d.  Awarding Ms. Papero attorney's fees, costs, and expenses incurred in the prosecution of this action;

e.  Awarding Ms. Papero such other and further relief that this Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices; and

f.  Other such relief as this Court deems just and proper.

### JURY TRIAL DEMANDED

Pursuant to Rule 4102 of the New York Civil Practice Law and Rules, Plaintiff demands a trial by jury of all issues properly triable by a jury in this action.

Dated: <u>August 16, 2019</u>
Buffalo, New York

Respectfully submitted,
Plaintiff

Julie Papero

LINDY KORN, Esq.
Attorney for Plaintiff
Law Office of Lindy Korn PLLC
Electric Tower
535 Washington Street, Ninth Floor
Buffalo, New York 14203
716-856-5676
716-507-8475 (*facsimile*);
E-mail: lkorn@lkorn-law.com

15

Case 1:19-cv-01309-JLS-HKS   Document 1-2   Filed 09/25/19   Page 20 of 26

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE
-----------------------------------------------------------------X
JULIE A. PAPERO,

Index No. _____

                                    *Plaintiff*,

        v.                                          **VERIFICATION**


ROSWELL PARK COMPREHENSIVE
CANCER CENTER, HEIDI FINDLAY, and
LAUREL DIBROG,
                                    *Defendants.*
-----------------------------------------------------------------X

        JULIE A. PAPERO, under penalty of perjury, deposes and says:

        I have read the attached *Verified Complaint* captioned in this matter and find it to be true
to my knowledge, except as to matters alleged upon information and belief, which I believe to be
true.

        To the best of my knowledge, information, and belief formed after an inquiry reasonable
under the circumstances, the presentation of these papers, or the contentions therein are not
frivolous as defined in subsection (c) of § 130.1-1 of the Rules of the Chief Administrative Judge
(22 NYCRR).


                                        _____
                                        JULIE A. PAPERO


Sworn before me on this _16_ day of August, 2019


_____
Notary Public


LINDY SUE KORN
Notary Public, State of New York
Registration #02KO4700780
Qualified In Erie County
Commission Expires June 30, 2023

16

*Exhibit 3*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

-------------------------------------------------------------------X

JULIE A. PAPERO,

Index No.  811224/2019

*Plaintiff*,

v.     **SUMMONS**

ROSWELL PARK COMPREHENSIVE
CANCER CENTER, HEIDI FINDLAY, and
LAUREL DIBROG,

*Defendants.*

-------------------------------------------------------------------X

To:     Heidi Findlay
        Roswell Park Comprehensive Cancer Institute
        Elm & Carlton Streets
        Buffalo, New York 14263

You are hereby summoned and required to serve upon Plaintiff's attorney an answer to the complaint in this action within twenty days after the service of this summons, exclusive of the day of service, or within thirty days after service is complete if this summons is not personally delivered to you within the State of New York. In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the complaint.

The basis of the venue designated is Erie County, New York, as it is the residence of the Plaintiff.

Venue is also designated as Erie County, New York, as the Defendants are located in Erie County, New York and the acts and omissions giving rise to this claim occurred in Erie County, New York.

Dated: September 3, 2019
       Buffalo, New York

By: _____
       Lindy Korn, Esq.
       Law Office of Lindy Korn
       *Attorney for Julie A. Papero*
       535 Washington St., Ninth Floor
       Buffalo, New York 14203
       716-856-5676
       E-mail: lkorn@lkorn-law.com

*Exhibit 4*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE
-----------------------------------------------------------------X
JULIE A. PAPERO,

Index No. <u>811224/2019</u>

*Plaintiff*,

v.                                                                        **SUMMONS**

ROSWELL PARK COMPREHENSIVE
CANCER CENTER, HEIDI FINDLAY, and
LAUREL DIBROG,

*Defendants.*
-----------------------------------------------------------------X

To:     Laurel Dibrog
        Roswell Park Comprehensive Cancer Institute
        Elm & Carlton Streets
        Buffalo, New York 14263

You are hereby summoned and required to serve upon Plaintiff's attorney an answer to the complaint in this action within twenty days after the service of this summons, exclusive of the day of service, or within thirty days after service is complete if this summons is not personally delivered to you within the State of New York. In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the complaint.

The basis of the venue designated is Erie County, New York, as it is the residence of the Plaintiff.

Venue is also designated as Erie County, New York, as the Defendants are located in Erie County, New York and the acts and omissions giving rise to this claim occurred in Erie County, New York.

Dated: September 3, 2019
       Buffalo, New York

By: _____
       Lindy Korn, Esq.
       Law Office of Lindy Korn
       *Attorney for Julie A. Papero*
       535 Washington St., Ninth Floor
       Buffalo, New York 14203
       716-856-5676
       E-mail: lkorn@lkorn-law.com

*Exhibit 5*

STATE OF NEW YORK
SUPREME COURT: COUNTY OF ERIE

---

JULIE PAPERO

,Complainant

**AFFIDAVIT OF SERVICE**

ROSWELL PARK COMPREHENSIVE
CANCER INSTITUTE et al

,Respondent          Index No. 811224/2019

---

STATE OF NEW YORK )
COUNTY OF ERIE       ) ss.:

The undersigned being duly sworn deposes and says:

1) That I am counsel of record for Julie Papero in the matter of Julie Papero v.

   Roswell Park Comprehensive Cancer Institute, et al.

2) That the opposing attorney requested and accepted service on behalf of all

   defendants.

Lindy Korn, Esq.

Sworn to before me this _5th_ day of _September_ 2019

Notary Public, State of New York
Qualified in Erie County
My Commission Expires_ 2020 _

CATHERINE MCCULLE
NOTARY PUBLIC-STATE OF NEW YOR
No. 02MC6344771
Qualified in Erie County
My Commission Expires 07-11-2020